# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LIONEL DE SOUZA<br>2781 State Route 746<br>Cardington, Ohio 43315,<br><br>         Plaintiff,<br><br>         v.<br><br>LAUREATE INTERNATIONAL<br>UNIVERSITIES<br>650 S Exeter Street<br>Baltimore, Maryland 21202<br><br>    -and-<br><br>WALDEN UNIVERSITY<br>100 S Washington Avenue #900<br>Minneapolis, Minnesota 55401,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Lionel De Souza, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES, JURISDICTION, & VENUE

1. De Souza is a resident of the village of Cardington, Morrow County, Ohio.

2. At all times herein, De Souza was acting in the course and scope of his employment.

3. Walden University ("Walden") is part of a global network of universities managed by Laureate Education, Inc. d/b/a Laureate International Universities ("Laureate").

4. Walden's principal place of business is located in Minneapolis, Minnesota.

5. Laureate's principal place of business is located in Baltimore, Maryland.

6. Walden is a university.

7. Laureate is a network of universities.

8. Laureate has a significant role in decision-making regarding the hiring, termination, control, payment, and workload of faculty and staff for Walden's online teaching programs.

9. Walden does business in the State of Ohio.

10. Walden has students in the State of Ohio.

11. Laureate does business in the State of Ohio.

12. Laureate has students in the State of Ohio.

13. De Souza performed all work for Walden and Laureate from Cardington, Morrow County, Ohio.

14. Laureate hired De Souza.

15. Walden hired De Souza.

16. De Souza was assigned by Laureate to teaching positions.

17. Walden pays De Souza.

18. The Human Resources department to which De Souza reports is staffed by Laureate.

19. During the relevant period, Laureate employees were responsible for monitoring and assessing De Souza's performance.

20. During the relevant period, Walden employees were responsible for monitoring and assessing De Souza's performance.

21. During the relevant period, Laureate employees were responsible for assigning work to De Souza.

22. During the relevant period, Walden employees were responsible for assigning work to De Souza.

23. Laureate and Walden form a single employer for the purposes of the claims asserted by De Souza herein. Laureate and Walden are hereinafter referred to collectively as "Defendants."

24. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that De Souza is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000e ("Title VII").

25. Defendants are and, at all times herein, were employers within the meaning of Title VII.

26. Defendants are and, at all times herein, were employers within the meaning of R.C. § 4112.01 *et seq.*

27. All material events alleged in this Complaint occurred in Morrow County, Ohio.

28. This Court has supplemental jurisdiction over De Souza's state law claims pursuant to 28 U.S.C. § 1367 as De Souza's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

30. Within 300 days of the conduct alleged below, De Souza filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-01849 against Defendants ("De Souza EEOC Charge").

31. On or about September 22, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to De Souza regarding the Charges of Discrimination brought by De Souza against Defendants in the De Souza EEOC Charge.

32. De Souza received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

33. De Souza has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

34. De Souza has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

35. In or about 2005, De Souza began working for Laureate.

36. In or about 2009, De Souza began working for Walden.

37. De Souza's job title at Walden is Contributing Faculty Member.

38. De Souza serves as an adviser for Defendants' online doctoral programs.

39. De Souza advises students who study business management and administration.

40. Laureate employed De Souza.

41. Walden employed De Souza.

42. Defendants employed De Souza.

43. Since 2005, De Souza has taught eight-week courses or "modules" for Defendants.

44. De Souza is Asian-American.

45. De Souza is originally from India.

46. De Souza is 67 years old.

47. In 2013, De Souza earned $20,711.52 from his work for Walden.

48. In 2013, De Souza earned approximately $100,000 from additional work he did for Laureate.

49. In 2013, De Souza earned approximately $120,000 from his work for Defendants.

50. In or about 2013, Gene Fusch made several comments about De Souza's English proficiency ("English Comments").

51. Among the English Comments, Fusch asked De Souza how he was so proficient in English.

52. Among the English Comments, Fusch asked De Souza where he had received his education.

53. Fusch was a member of the core faculty at Walden.

54. Fusch is Caucasian.

55. Fusch was born in the United States.

56. De Souza is fluent in English.

57. De Souza is a native English speaker.

58. De Souza objected to the English Comments.

59. In or about 2014, De Souza worked over 40 hours per week for Defendants.

60. In or about 2015, Defendants began to cut De Souza's workload.

61. Defendants cut De Souza's workload intentionally.

62. Defendants cut De Souza's workload willfully.

63. Defendants cut De Souza's workload because of his race.

64. Defendants cut De Souza's workload because of his national origin.

65. In or about 2015, Defendants began to cut De Souza's pay.

66. Defendants cut De Souza's pay intentionally.

67. Defendants cut De Souza's pay willfully.

68. Defendants cut De Souza's pay because of his race.

69. Defendants cut De Souza's pay because of his national origin.


70. In or about 2015, Defendants hired non-Asian-American faculty members.

71. In or about 2015, Defendants hired American-born faculty members.

72. In or about 2017, Douglas Campbell told De Souza that a student had a "hidden agenda" because he was from Sudan ("Hidden Agenda Comment").

73. Campbell was on a committee with De Souza, as a reviewer.

74. De Souza told Campbell and Fusch that he objected to the Hidden Agenda Comment.

5

75. In or about 2017, a Walden student named Martin Mulomba requested De Souza as his adviser.

76. Mulomba is from Africa.

77. In or about 2017, Walden told students that De Souza was not available to be an adviser.

78. In or about 2017, Walden told Mulomba that De Souza was not available to be an adviser.

79. In or about 2017, Walden published a spreadsheet with the heading "DBA Program: Available Faculty for Mentors and Committees."

80. "DBA" stands for "Doctorate of Business Administration."

81. The "DBA Program: Available Faculty for Mentors and Committees" spreadsheet listed De Souza as "NOT available for Mentoring or Chair."

82. In or about 2017, De Souza was available to be an adviser.

83. Walden did not require faculty to apply to be mentors.

84. Walden did not require faculty to apply to serve on committees.

85. Fusch was responsible for making assignments of mentors.

86. Fusch was responsible for making assignments of committee members.

87. Walden did not state a reason for listing De Souza as unavailable.

88. Walden said De Souza was marked as unavailable in order to reduce De Souza's workload.

89. Walden said De Souza was unavailable in order to reduce De Souza's pay.

90. Walden intentionally said De Souza was unavailable.

91. Walden willfully said De Souza was unavailable.

92. Walden said De Souza was unavailable because of his race.

93. Walden said De Souza was unavailable because of his national origin.

94. Walden said De Souza was unavailable in order to reduce De Souza's workload.

95. Walden said De Souza was unavailable in order to reduce De Souza's pay.

96. Defendants intentionally said De Souza was unavailable.

97. Defendants willfully said De Souza was unavailable.

98. Defendants said De Souza was unavailable because of his race.

99. Defendants said De Souza was unavailable because of his national origin.

100. Defendants said De Souza was unavailable in order to reduce De Souza's pay.

101. Defendants intentionally said De Souza was unavailable.

102. Defendants willfully said De Souza was unavailable.

103. Hereinafter, the English Comments and the Hidden Agenda Comment are collectively called the "Discriminatory Comments."

104. De Souza opposed the Discriminatory Comments.

105. In or about May 2018, De Souza emailed Laureate's Vice President of Human Resources Luis H. Novelo and Chief Ethics and Compliance Officer Mark S. Snyderman ("Report of Discrimination").

106. In the Report of Discrimination, De Souza reported that he believed Defendants were discriminating against him on the basis of race.

107. In the Report of Discrimination, De Souza opposed discrimination.

108. After the Report of Discrimination, Defendants further cut De Souza's workload.

109. After the Report of Discrimination, Defendants further cut De Souza's pay.

110. In 2017, De Souza received $18,711 for work at Walden.

111. In 2018, De Souza received $12,060 for work at Walden.

112. From 2017 to 2018, De Souza's pay for work at Walden decreased by more than 35%.

113. In 2019, De Souza received $9,660 for work at Walden.

114. From 2017 to 2019, De Souza's pay for work at Walden decreased by more than 48%.

115. From 2013 to 2019, De Souza's pay for work for Defendants decreased by more than $100,000.

116. From 2013 to 2019, De Souza's pay for work for Defendants decreased by more than 80%.

117. Defendants' reduction of De Souza's workload was an adverse action.

118. Defendants' reduction of De Souza's workload was an adverse employment action.

119. Defendants' reduction of De Souza's pay was an adverse action.

120. Defendants' reduction of De Souza's pay was an adverse employment action.

121. Defendants intentionally reduced De Souza's workload.

122. Defendants willfully reduced De Souza's workload.

123. Defendants intentionally reduced De Souza's pay.

124. Defendants willfully reduced De Souza's pay.

125. Defendants reduced De Souza's workload because of his race.

126. Defendants reduced De Souza's workload because of his national origin.

127. Defendants reduced De Souza's pay because of his race.

128. Defendants reduced De Souza's pay because of his national origin.

129. As a direct and proximate result of Defendants' conduct, De Souza suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

130. De Souza restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Throughout his employment, De Souza was fully competent to perform his essential job duties.

132. Defendants treated De Souza differently than other similarly-situated employees based on his race.

133. Defendants replaced De Souza with non-Asian employees.

134. Defendants violated Title VII by discriminating against De Souza due to his race.

135. Defendants cut De Souza's workload based on his race.

136. Defendants cut De Souza's pay based on his race.

137. Defendants violated Title VII when they terminated De Souza based on his race.

138. As a direct and proximate result of Defendants' conduct, De Souza has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

139. De Souza restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Throughout his employment, De Souza was fully competent to perform his essential job duties.

141. Defendants treated De Souza differently than other similarly-situated employees based on his race.

142. Defendants replaced De Souza with non-Asian employees.

143. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against De Souza due to his race.

144. Defendants cut De Souza's workload based on his race.

145. Defendants cut De Souza's pay based on his race.

146. Defendants violated R.C. § 4112.01 *et seq.* when they terminated De Souza based on his race.

147. As a direct and proximate result of Defendants' conduct, De Souza has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

148. De Souza restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. Throughout his employment, De Souza was fully competent to perform his essential job duties.

150. Defendants treated De Souza differently than other similarly-situated employees based on his national origin.

151. Defendants replaced De Souza with non-Indian employees.

152. Defendants violated Title VII by discriminating against De Souza due to his national origin.

153. Defendants cut De Souza's workload based on his national origin.

154. Defendants cut De Souza's pay based on his national origin.

155. Defendants violated Title VII when they terminated De Souza based on his national origin.

156. As a direct and proximate result of Defendants' conduct, De Souza has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

157. De Souza restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Throughout his employment, De Souza was fully competent to perform his essential job duties.

159. Defendants treated De Souza differently than other similarly-situated employees based on his national origin.

160. Defendants replaced De Souza with non-Indian employees.

161. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against De Souza due to his national origin.

162. Defendants cut De Souza's workload based on his national origin.

163. Defendants cut De Souza's pay based on his national origin.

164. Defendants violated R.C. § 4112.01 *et seq.* when they terminated De Souza based on his national origin.

165. As a direct and proximate result of Defendants' conduct, De Souza has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT V:  RETALIATORY DISCRIMINATION IN VIOLATION OF TITLE VII**

166. De Souza restates each and every prior paragraph of this complaint, as if it were fully restated herein.

167. As a result of Defendants' discriminatory conduct described above, De Souza complained about the discrimination and retaliation he was experiencing.

168. Subsequent to De Souza's complaining about discrimination, Defendants reduced De Souza's workload.

169. Subsequent to De Souza's complaining about discrimination, Defendants reduced De Souza's pay.

170. Defendants' actions were retaliatory in nature based on De Souza's opposition to the unlawful discriminatory conduct.

171. Pursuant to Title VII, it is unlawful to retaliate against an employee for opposing discrimination.

172. As a direct and proximate result of Defendants' conduct, De Souza suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: RETALIATORY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

173. De Souza restates each and every prior paragraph of this complaint, as if it were fully restated herein.

174. As a result of Defendants' discriminatory conduct described above, De Souza complained about the discrimination and retaliation he was experiencing.

175. Subsequent to De Souza's complaining about discrimination, Defendants reduced De Souza's workload.

176. Subsequent to De Souza's complaining about discrimination, Defendants reduced De Souza's pay.

177. Defendants' actions were retaliatory in nature based on De Souza's opposition to the unlawful discriminatory conduct.

178. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

179. As a direct and proximate result of Defendants' conduct, De Souza suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff De Souza respectfully requests that this Honorable Court grant the following relief:

(a) An award against Defendants of compensatory and monetary damages to compensate De Souza for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against Defendants in an amount in excess of $25,000;

(c) An award of reasonable attorneys' fees and non-taxable costs for De Souza's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli_____*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Lionel De Souza*

## JURY DEMAND

Plaintiff De Souza demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli_____*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)